

## STATE OF RHODE ISLAND
## AND PROVIDENCE PLANTATIONS

### CLERK'S CERTIFICATE AND TRANSMITTAL OF THE RECORD

**Case Information**

Case Caption: __Andrew Ford__ vs. __Specialized Loan Servicing, LLC__

Federal Court Case No. __1:17-cv-00286__   State Court Case No. __NC-2016-0345__

**Record Information**

Confidential: Yes ☐   No ☑   Description: _____

Sealed documents: Yes ☐   No ☑   Description: _____

**Certification**

I, __Jane M. Anthony__, Clerk of the Rhode Island Superior Court for the County of __Newport__ do certify that the attached documents are all the documents included in the record in the above referenced case.

Date: Jun/13/2017

Clerk:
/s/ Jane M. Anthony

Prepared by:
/s/ Patty DelBrocco

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ANDREW E. FORD,

          Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC,

          Defendant.

C.A. No.    1:17-cv-286

## NOTICE OF REMOVAL

Defendant Specialized Loan Servicing, LLC ("Defendant") hereby gives notice –
pursuant to 28 U.S.C. §§ 1446, 1441 and 1332 – of the Removal to this Court of the action
commenced against it in the Rhode Island Superior Court for Newport County. This Court has
diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. In further support of
removal, Defendant states as follows:

### The State Court Action

1.      On September 9, 2016, plaintiff Andrew E. Ford ("Plaintiff") filed a Complaint
against Defendant in the Rhode Island Superior Court for Newport County, styled as *Andrew
E. Ford v. Specialized Loan Servicing, LLC*, NC-2016-0345 ("State Court Action").

2.      On January 18, 2017, Plaintiff filed an Amended Complaint in the State Court
Action.

3.      This Removal is timely, as it is being filed within 30 days after Defendant
received a copy of the Amended Complaint on or about May 26, 2017. Defendant did not
receive a copy of the initial Complaint in the State Court Action.

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 6/13/2017
Envelope: 1080273
Reviewer: Patricia D.

Case 1:17-cv-00286-DAD Document 3 Filed 06/13/17 Page 3 of 71 PageID #: 31

4.      A true and accurate copy of the Amended Complaint is attached hereto as Exhibit A.

5.      The Amended Complaint alleges that Defendant breached a mortgage modification agreement and improperly foreclosed on Plaintiff's mortgage loan.

## Pleadings and Notice to the State Court

6.      Pursuant to 28 U.S.C. § 1446 and LR Cv 81, certified copies of the docket sheet and all documents filed in the State Court Action will be filed in this Court. Contemporaneous with the filing of this Notice of Removal, Defendant will provide Plaintiff and the state court with copies of this Notice of Removal. A copy of the Notice of Filing Notice of Removal (to be filed in the State Court Action) is attached hereto as Exhibit B.

## Statement of Statutory Basis for Jurisdiction

7.      This action is within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. § 1332. Section 1332 provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." 28 U.S.C. § 1332. This action satisfies both statutory requirements.

8.      The parties are citizens of different states. Plaintiff alleges (a) that he is a resident of Jamestown, Rhode Island; and (b) that Defendant is a limited liability corporation domiciled in Highlands Ranch, Colorado. See *Amended Complaint*, ¶¶ 4-5.

9.      The amount in controversy exceeds $75,000. Plaintiff asserts claims for breach of contract, breach of duty of good faith, violation of consumer protection laws and quiet title, among other things, with respect to an alleged mortgage modification agreement and mortgage foreclosure on property located at 77 Watson Avenue, Jamestown, RI 02835 ("the Property").

2

See *Amended Complaint*, ¶¶ 6-72. Plaintiff requests, among other things, a declaratory judgment finding that the foreclosure sale was void and that he owns the Property in fee simple. See *id.* The tax assessor for the Town of Jamestown currently lists the value of the Property at $366,900. In addition, Plaintiff requests actual damages, exemplary damages, and attorneys' fees. See *id.*

10.     In calculating the amount in controversy, the Court should consider the total amount of monetary relief that Plaintiff seeks to recover or the financial impact the relief sought would have on the Defendant. See Dept. of Recreation & Sports v. World Boxing, 942 F.2d 84, 90 (1st Cir. 1991); Comm. of Mass. v. United States Veterans Admin., 541 F.2d 119, 122, n.3 (1st Cir. 1976) (considering amount in controversy based on potential financial effect on defendant). When a complaint seeks declaratory and injunctive relief, the amount in controversy may be measured by the value of the object of the litigation. See Lewis v. Ford Motor Co., 610 F. Supp. 2d. 476, 485 (W.D. Pa. 2009); Ras-berry v. Capitol County Mut. Fire Ins. Co., 609 F. Supp. 2d 594, 601 (E.D. Tex. 2009). In cases where a plaintiff seeks actual and punitive damages, both amounts are part of the total the amount in controversy. See Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238 (1943). Here, the Property is worth far more than $75,000, so the amount-in-controversy requirement is easily satisfied.

11.     If any question arises as to the propriety of the removal of this matter, Defendant requests the opportunity to submit briefs and be heard at oral argument in support of the propriety of this Removal.

WHEREFORE, defendant Specialized Loan Servicing, LLC. respectfully requests that this Court assume jurisdiction over this case and that no further proceedings be held in the Newport County Superior Court.

3

Respectfully submitted,

SPECIALIZED LOAN SERVICING, LLC,

By its attorneys,

*/s/ Carl E. Fumarola*

Carl E. Fumarola, Bar No. 6980
Nelson Mullins Riley & Scarborough LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
Tel: 401-519-3850
Fax: 401-519-3601
Email: carl.fumarola@nelsonmullins.com

Date: June 13, 2017

## CERTIFICATE OF SERVICE

I, Carl E. Fumarola, certify that on this 13th day of June, 2017, I filed the foregoing document through the ECF system, thereby serving it electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on this date. The foregoing document is available for viewing and downloading from the ECF system.

*/s/ Carl E. Fumarola*

Carl E. Fumarola

4



# Exhibit A

**STATE OF RHODE ISLAND**
**NEWPORT, SC.**

**SUPERIOR COURT**

---

ANDREW E. FORD,                           )
                                          )
           *Plaintiff,*                   )          C.A. No. NC-2016-0345
                                          )
vs.                                       )          AMENDED COMPLAINT
                                          )
SPECIALIZED LOAN SERVICING, LLC,          )          JURY DEMAND
                                          )
           *Defendants.*                  )
                                          )

---

## INTRODUCTION

1.      This complaint arises from the intentional acts of Specialized Loan Servicing, LLC (SLS) whereby they breached a contract and their duty of good faith and fair dealing by refusing to honor a Permanent Modification Contract agreed to by Plaintiff and the Defendant.

2.      The Plaintiff prays that this Honorable Court find that the Defendant breached the Permanent Modification contract as noted herein as well as their duty of good faith and fair dealing owed to the Plaintiff. Plaintiff further seeks declaratory judgement that any foreclosure or mortgagee's foreclosure sale is the direct and proximate result of Defendant's breach and is void. Moreover, the Plaintiff prays this Honorable Court enjoin the Defendant from taking further foreclosure action eviction action and/or transferring right title and interest in the subject matter property to any third party purchaser at mortgagee's foreclosure sale.

## JURISDICTION AND VENUE

3.      Venue is proper in this Court in that a substantial part of the events or omissions giving rise to this claim have occurred, and the real property that is the subject of the action is situated within the State of Rhode Island.

1

## PARTIES

4.      Plaintiff, Andrew E. Ford, resides at and claims to be the owner of real property located

77 Watson Avenue, Jamestown, RI 02835, which is the subject property referenced herein.

5.      Defendant, Specialized Loan Servicing, LLC (SLS) is a mortgage servicer and upon good

information      and      belief      is      located      at      8742      Lucent      Blvd,      Suite      300

Highlands Ranch, CO  80129.

## FACTS

6.      Plaintiff, Andrew E. Ford, resides at and claims to be the owner of real property located

77 Watson Avenue, Jamestown, RI 02835 (Subject Property), as evidenced by deed recorded in

the Jamestown Clerk's Office, Land Evidence Records in Book 347 at Page 15 on February 3,

2000.

7.      Subsequently, Plaintiff executed a mortgage and note as evidenced by a mortgage which

was recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 618 at Page 17

on March 30, 2007. (The Ford Mortgage). The servicing of the Ford Mortgage was ultimately

transferred to SLS.

8.      Plaintiff submitted a request for mortgage assistance to SLS in an effort to modify his

mortgage.

9.      Plaintiff was offered a Trial Period Plan (TPP) by SLS wherein he was to make three

monthly mortgage payments pursuant to the TPP and upon successful completion of the TPP

SLS would permanently modify The Ford Mortgage. Plaintiff made all three payments pursuant

to the TPP, on time and as agreed and continued making those payments for an extended period

after the first three payments.

2

10.     On or about November 2015, SLS offered Plaintiff a Permanent Modification Contract. Plaintiff accepted said offer and executed and returned the Permanent Modification Contract to SLS on January 26, 2016. (See: Exhibit 1).

11.     Plaintiff made payments pursuant to the Permanent Modification Contract on time and as agreed through May 2016 when SLS breached the modification contract, refused to accept further payment and proceeded to initiate foreclosure proceedings.

12.     On or about July 15, 2016, SLS, through their attorney Harmon Law, P.C. caused to be sent to Plaintiff a Notice of Mortgagee' Foreclosure Sale, stating a sale date of September 7, 2016.

13.     On or about July 18, 2016, Plaintiff sent to Harmon Law, P.C. a letter disputing the validity of the debt.

14.     On August 22, 2016 SLS, through the attorney Harmon Law, P.C., responded claiming the debt was valid and that foreclosure would move forward. Said letter did not state that Plaintiff and SLS had entered into a Permanent Modification Contract.

15.     On September 7, 2016, SLS purportedly foreclosed the Ford Mortgage and sold the subject property at mortgagee's foreclosure sale.

## COUNT I
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

16.     The Plaintiff hereby reincorporates paragraphs 1 – 15 as if they were fully articulated herein.

17.     Defendant SLS has breached the Permanent Modification Contract entered into by Plaintiff and SLS by refusing to honor said contract and the terms and agreed to amounts due pursuant to same.

3

18.     Defendant SLS breached their duty of good faith and fair dealing by failing to cure those breaches of said contract, and instead foreclosed the subject mortgage.

19.     Plaintiff is being irreparably harmed by the actions of the Defendant.

20.     Plaintiff has no other remedy at law but to seek the relief requested herein.

21.     The Equities of the matter favor the Plaintiff.

22.     Public Policy matters favor the Plaintiff.

**WHEREFORE**, Plaintiff prays for the following relief:

a.  Determine that Defendant SLS has breached the Permanent Modification Contract entered into between Plaintiff and SLS;

b.  Determine that the Defendant SLS has breached their duty of good faith and fair dealing they owed to the Plaintiff;

c.  Determine that any mortgagee's foreclosure sale conducted by the Defendant is the direct and proximate result of Defendant's breach and is void and without force and effect;

d.  Enjoin the Defendant from transferring any right, title, and interest in the subject property to any bidder at mortgagee's foreclosure sale and or void any such transfer already made;

e.  Grant a permanent or final injunction enjoining the Defendant, their agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiff, including, but not limited to, a stay of foreclosure and or eviction;

f.  Award the Plaintiff compensatory damages against the Defendant for their wrongful slander of title and abuse of process in a sum to be determined by a trier of fact;

g.  Award legal fees and costs;

4

  h. Award punitive damages;

  i. Award such other relief as this Court deems just and proper.

**COUNT II**
**BREACH OF DUTY OF GOOD FAITH AND REASONABLE DILIGENCE**

23. Plaintiff repeats and incorporates paragraphs 1 - 22 above as if fully articulated herein.

24. As the entity responsible for servicing Plaintiff's mortgage loan, SLS, owed the Plaintiff a duty of good faith and fair dealing.

25. By breaching the terms of the Permanent Modification Contract agreed to by Plaintiff and SLS, the Defendants, SLS, violated this duty.

26. By refusing to honor the Permanent Modification Contract proceeding with a non-judicial foreclosure, Defendant violated this duty.

27. The Plaintiff was damaged by these breaches of duty including without limitation, loss of equity, lost opportunities to work-out his mortgage delinquency, and by imposition of inappropriate foreclosure fees and costs on his account.

28. Plaintiff suffered severe and extreme emotional and mental distress as the direct result of the Defendant's actions.

29. The Plaintiff is entitled to a declaratory judgment determining that the attempted and/or completed foreclosure and mortgagee's foreclosure sale of the subject property is void.

30. The Plaintiff is entitled to an injunction preventing the transfer of the right, title, and interest in the subject property.

31. The Plaintiff is entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

32. Plaintiff is entitled to a Court Order requiring that Defendant SLS take all necessary steps to restore legal title to the subject property as if no foreclosure sale had ever occurred. In

5

addition, Plaintiff is entitled to be returned to his status and circumstances prior to the wrongful

foreclosure sale.

### COUNT III
### BREACH OF CONTRACT AND BREACH OF COVENANT
### OF GOOD FAITH AND FAIR DEALING
### FOR VIOLATIONS OF LAW ARISING FROM THE PERMANENT MODIFICATION
### CONTRACT

33.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

34.    As described above, the Permanent Modification Contract sent by SLS to the Plaintiff

constitutes a valid offer.

35.    By executing the Permanent Modification Contract and returning it to SLS Plaintiff

accepted SLS's offer.

36.    Alternatively, Plaintiff's return of the Permanent Modification Contract constitutes an

offer. Acceptance of that offer occurred when SLS accepted Plaintiff's payments made pursuant

to the Permanent Modification Contract.

37.    The Permanent Modification Contract was supported by consideration.    Plaintiff's

payments to SLS consideration.

38.    Plaintiff and SLS thereby formed a valid contract.

39.    To the extent that the contract was subject to a condition subsequent by providing SLS an

opportunity to review the documentation submitted by Plaintiff when he returned the signed

Permanent Modification Contract, to determine its sufficiency, this condition was waived by SLS

in that it failed to timely raise it and/or it is estopped to assert it as a defense to Plaintiff's claims.

40.    By refusing to honor the terms of the Permanent Modification Contract, Defendant

breached the contract.

41.    Plaintiff remains ready, willing and able to perform under the contract.

6

42. Plaintiff has suffered harm and is threatened with additional harm from Defendant's breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

43. The Defendant is obligated by contract and common law to act in good faith and to deal fairly with the Plaintiff so as to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance. *See e.g.*, *Ide Farm & Stable, Inc. v. Cardi*, 110 R.I. 735, 739 (1972).

44. Upon good information and belief SLS routinely and regularly acts in bad faith and breaches this duty for its own economic benefit, preventing contractual objectives from being achieved, by:

   a. Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff;

   b. Failing to properly train and supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel, and personnel implementing its modification programs;

   c. Making inaccurate calculations and determinations of Plaintiff's Permanent Modification Contract terms;

   d. Encouraging and/or allowing its employees and agents to make inaccurate and fraudulent misrepresentations regarding the terms and amounts due with regards to Permanent Modification Contracts;

   e. Failing to follow through on written and implied promises;

   f. Failing to follow through on contractual obligations; and

7

g. Failing to give correct or otherwise resolve Plaintiff's complaint's regarding the Permanent Modification Contract.

45.    As a result of these failures to act in good faith and the absence of fair dealing, the Defendants' caused Plaintiff harm, as alleged above. The Defendants' bad faith was thus to Plaintiff's detriment.

**COUNT IV**
**PROMISSORY ESTOPPEL, IN THE ALTERNATIVE**

46.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

47.    SLS, by way of its Permanent Modification Contract, made representations to Plaintiff that if he returned the said Contract executed, and made his payments, the terms of the Contract would be adhered to.

48.    The Permanent Modification Contract was intended to induce Plaintiff to rely on it and make monthly payments.

49.    Plaintiff did indeed rely on SLS's representation, by submitting payments as agreed.

50.    Given the language in the Permanent Modification Contract, Plaintiff's reliance was reasonable.

51.    Plaintiff's reliance was to his detriment. Plaintiff's detrimental reliance is measured by the difference between his current circumstances and the terms of the modification that he was entitled to – a difference that includes the wrongful loss of a property interest. Such detriment includes longer loan payoff times, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest. Further, Plaintiff has lost the opportunity to fund other strategies to deal with their default and to avoid foreclosure.

8

## COUNT V

## VIOLATION OF R.I GEN. LAWS § 6-13 - CONSUMER PROTECTION AND UNFAIR AND DECEPTIVE ACTS AND PRACTICES LAWS

52.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

53.     SLS's conduct as set forth herein constitutes trade - the offering, advertising and sale of goods and services.

54.     SLS's conduct as set forth herein occurred in the course of trade or commerce.

55.     SLSs conduct as set forth herein affects the public interest and is part of a generalized course of conduct affecting numerous consumers, including Plaintiff.

56.     Plaintiff is a consumer.

57.     Plaintiff sought to obtain SLS's goods and services primarily for personal, family or household use.

58.     SLS made false, deceptive and misleading representations and omissions about material aspects of the goods and services described herein.

59.     SLS made these representations and omissions knowingly and willfully and with the intent that Plaintiff would rely on them and would enter into contract or obligations as a result.

60.     SLS's conduct was likely to induce reliance and to create confusion and misunderstanding.

61.     Plaintiffs' did rely on SLS's representations and omissions.

62.     SLS's conduct as set forth herein is deceptive, unfair and unconscionable, in violation of R.I. Gen. Laws § 6-13.1-2.

63.     SLS's conduct as set forth herein is not required, permitted or authorized by any state or federal law.

9

64.     SLS's conduct as set forth herein violates established public policy, and the harms caused to Plaintiff as a consumer greatly outweighs any benefits associated with that conduct.

65.     As a result of SLS's conduct, Plaintiff suffered ascertainable damages and ascertainable losses including:

        a.     wrongful foreclosure;

        b.     otherwise avoidable potential loss of home to foreclosure;

        c.     increased fees and other costs to avoid or attempt to avoid foreclosure;

        d.     loss of savings in fruitless attempts to secure loan modification;

        e.     loss of opportunities to pursue other refinancing or loss mitigation strategies;

        f.     significant stress and emotional distress;

        g.     accrued interest and increased principal balances; and

        h.     less favorable potential modification terms.

66.     Plaintiffs' are entitled to actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT VI
## QUIETING TITLE

67.     The Plaintiff hereby restates and reincorporates paragraphs 1 – 66 as if they were fully articulated herein.

68.     The real estate as issue is located at 77 Watson Lane, Jamestown, RI 02835.

69.     SLS claims to have an interest in the property pursuant to a void foreclosure and mortgagee's foreclosure sale. The address of SLS is set forth hereinabove.

10

70.     Defendant, SLS, and Plaintiff, both make claim to the interest in the aforesaid subject property.

71.     Plaintiff claims title to the property pursuant to a Deed recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 347 at Page 15 on February 3, 2000, granting the Property to Plaintiff.

72.     Defendant SLS claims an interest adverse to Plaintiff, by way of a void Foreclosure Deed recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 880 at Page 152 on November 10, 2016.

**WHEREFORE**, Plaintiff prays for the following relief:

   a. That judgment enters for him on this complaint regarding title to and ownership of the subject property that is subject of this claim;

   b. That the Court find as a matter of law that the owner of this property is Andrew E. Ford

   c. That this Court enters an order quieting title to this property by entering an order that the fee related thereto belongs to Andrew E. Ford;

   d. That the Court or other trier of fact award Plaintiff costs, including reasonable attorney's fees, and damages it deems appropriate.

Dated: January 10, 2017

                                                  Respectfully Submitted, Plaintiff,
                                                  by his Attorney,

                                                  /s/ Nicholas S. Gelfuso
                                                  Nicholas S. Gelfuso, Esq. (7913)
                                                  48 Power Road
                                                  Pawtucket, RI 02860
                                                  401-273-8200 Phone
                                                  401-859-2333 Fax
                                                  gelfusolawoffice@gmail.com

11

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 6/18/2017 4:36:12 PM
Envelope: 980693
Reviewer: Patricia DelBrocco

# Exhibit 1

After Recording Return To:
Specialized Loan Servicing LLC
8742 Lucent Blvd, Ste 300, Highlands Ranch, CO 80129
Attn: Loan Resolution Department
Tax/Map/Parcel ID Number:
Intangible Tax: $0.00

_____[Space Above This Line For Recording Data]_____

Investor Loan Number: 164421907 Investor Number: 5033  Borrower: ANDREW E FORD

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I"):  ANDREW E FORD whose address is 77 WATSON AVE, JAMESTOWN, RI 02835
("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):  Specialized Loan Servicing LLC a   whose principal place of business and
mailing address is 8742 Lucent Blvd. Ste 300, Highlands Ranch, CO 80129 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber
See Original Instrument , of the Records of NEWPORT County, RHODE ISLAND and Note
("Note"): March 30, 2007

Loan Number:  1008265204

Property Address ("Property"):  77 WATSON AVE, JAMESTOWN, RI 02835

  See Legal description referenced in the original security instrument.

If my representations in Section 1 continue to be true in all material respects, then this Home
Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.
The Mortgage and Note together, as they may previously have been amended, are referred to as the
"Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given
to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations.**  I certify, represent to Lender, covenant and agree:

   A.      I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
           Documents or my default is imminent, and (ii) I do not have sufficient income or access
           to sufficient liquid assets to make the monthly mortgage payments now or in the near
           future;

Page 1 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

B. One of the borrowers signing this Agreement lives in the property as a principal residence, and the Property has not been condemned;

C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on November 1, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on December 1, 2015.

A. The new Maturity Date will be: July 1, 2047.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $376,959.06 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

Page 2 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157 3/09 (rev. 10/10) SigniaDocs, Inc. 2010

C.  $109,820.09 of the New Principal Balance shall be deferred (the 'Deferred Principal Balance') and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $267,138.97. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 11/1/2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/1/2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 11/1/2015 | $808.96 | $410.06 May adjust periodically | $1,219.02 May adjust periodically | 12/1/2015 | 60 |
| 6 | 3.000% | 11/1/2020 | $939.83 | May adjust periodically | May adjust periodically | 12/1/2020 | 12 |
| 7-32 | 3.750% | 11/1/2021 | $1,042.51 | May adjust periodically | May adjust periodically | 12/1/2021 | 308 |

I will make these payments every month, in addition to 1 final Balloon Payment payable on July 1, 2047.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

The amount deferred through this modification agreement is $109,820.09 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

    (a) Unpaid Interest: $0.00
    (b) Corporate Advances: $0.00
    (c) Principal: $109,820.09

Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

    (a) Prior deferred interest:  $0.00

Page 3 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157 3/09 (rev. 10/10) SigniaDocs, Inc. 2010

provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

Page 6 of 8 Pages

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157 3/09 (rev. 10/10) SigniaDocs, Inc. 2010

Page 20

M.    That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.    That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.


THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS PLEASE CONTACT OUR LOAN RESOLUTION DEPARTMENT AT 1-800-306-6059.

Page 7 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

In Witness Whereof, the Lender and I have executed this Agreement.

Specialized Loan Servicing LLC
As Servicer

By: _____ (Seal)

Name: _____

Its: _____

Date: _____

_____ (Seal)   Date: 01/26/16
ANDREW E FORD

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____, *Trustee if the* _____ *Trust instrument dated*

_____, *for the benefit of* _____ *(Borrower)*

_____, *Trustee if the* _____ *Trust instrument dated*

_____, *for the benefit of* _____ *(Borrower)*

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 6/13/2017 ... Case 1:17-cv-00286-LDA Document 1-2 Filed 06/13/17 Page 24 of 71 PageID #: 52
Envelope: 1080273
Reviewer: Patricia D.

**STATE OF RHODE ISLAND**
**NEWPORT, SC.**

**SUPERIOR COURT**

# Exhibit B

ANDREW E. FORD,

        Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC,

        Defendant.

C.A. No.   NC-2016-0345

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant Specialized Loan Servicing, LLC filed a Notice of Removal for removal of this action to the United States District Court for the District of Rhode Island. By virtue of law, the aforesaid case is now removed, and all further proceedings in this Court are stayed. A copy of the Notice of Removal is attached hereto as Exhibit 1.

Respectfully submitted,

SPECIALIZED LOAN SERVICING, LLC,

By its attorneys,

*/s/ Carl E. Fumarola*

Carl E. Fumarola, Bar No. 6980
Nelson Mullins Riley & Scarborough LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
Tel: 401-519-3850
Fax: 401-519-3601
Email: carl.fumarola@nelsonmullins.com

Date: June 13, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2017, I filed and served this document through the electronic filing system on the following parties:

> Nicholas S. Gelfuso, Esq.
> 48 Power Road
> Pawtucket, RI 02860
> gelfusolawoffice@gmail.com

The document electronically filed is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

_/s/ Carl E. Fumarola_
Carl E. Fumarola, Bar No. 6980

- 2 -

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 6/13/2017 2:32:11 PM
Envelope: 1080273
Reviewer: Patricia D.

Case 1:17-cv-00286-M-LDA   Document 3   Filed 06/13/17   Page 26 of 71 PageID #: 54

**STATE OF RHODE ISLAND**                          **SUPERIOR COURT**
**NEWPORT, SC.**

ANDREW E. FORD,

          Plaintiff,

v.                                                        C.A. No.   NC-2016-0345

SPECIALIZED LOAN SERVICING, LLC,

          Defendant.

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant Specialized Loan Servicing, LLC filed a

Notice of Removal for removal of this action to the United States District Court for the District

of Rhode Island.  By virtue of law, the aforesaid case is now removed, and all further

proceedings in this Court are stayed.  A copy of the Notice of Removal is attached hereto as

Exhibit 1.

          Respectfully submitted,

          SPECIALIZED LOAN SERVICING, LLC,

          By its attorneys,

          */s/ Carl E. Fumarola*

          Carl E. Fumarola, Bar No. 6980
          Nelson Mullins Riley & Scarborough LLP
          10 Dorrance Street, Suite 700
          Providence, RI 02903
          Tel:  401-519-3850
          Fax: 401-519-3601
          Email: carl.fumarola@nelsonmullins.com

Date:  June 13, 2017

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 6/13/2017 2:52:12 PM
Envelope: 1080273
Reviewer: Patricia D.

Case 1:17-CV-00286-M-LDA   Document 3   Filed 06/13/17   Page 27 of 71 PageID #: 55

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2017, I filed and served this document through the electronic filing system on the following parties:

> Nicholas S. Gelfuso, Esq.
> 48 Power Road
> Pawtucket, RI  02860
> gelfusolawoffice@gmail.com

The document electronically filed is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Carl E. Fumarola*
Carl E. Fumarola, Bar No. 6980

- 2 -

NEWPORT COUNTY SUPERIOR COURT

# SC DOCKET SHEET

## CASE NO. NC-2016-0345

| | | |
|---|---|---|
| **Andrew Ford**<br>v.<br>**Specialized Loan Servicing, LLC** | §<br>§<br>§<br>§<br>§ | Location: **Newport County Superior Court**<br>Filed on: **09/09/2016**<br>US District Court Case Number: **1:17-cv-00286** |

---

### CASE INFORMATION

**Statistical Closures**
06/13/2017    Closed - Unassigned

Case Type: **Breach of Contract**

Case Status: **06/13/2017   Closed**

Case Flags: **Claim for Jury Trial**

---

| DATE | CASE ASSIGNMENT |
|---|---|
| | **Current Case Assignment**<br>Case Number          NC-2016-0345<br>Court               Newport County Superior Court<br>Date Assigned        09/09/2016 |

---

### PARTY INFORMATION

| | | |
|---|---|---|
| | | *Lead Attorneys* |
| **Plaintiff** | **Ford, Andrew E.** | **GELFUSO, NICHOLAS**<br>*Retained*<br>4012738200(W) |
| **Defendant** | **Specialized Loan Servicing, LLC** | **FUMAROLA, CARL**<br>*Retained*<br>6172174606(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| 06/13/2017 | Closed Unassigned |
| 06/13/2017 | Case Removed to US District Court |
| 06/13/2017 | Notice of Removal<br>*Notice of Filing Notice of Removal* |
| 01/18/2017 | Amended Complaint Filed<br>*Amended Complaint* |
| 09/09/2016 | Summons |
| 09/09/2016 | Complaint Filed<br>*Complaint* |



## STATE OF RHODE ISLAND
## AND PROVIDENCE PLANTATIONS

### CLERK'S CERTIFICATE AND TRANSMITTAL OF THE RECORD

| Case Information |
|---|

Case Caption: **Andrew Ford** vs. **Specialized Loan Servicing, LLC**

Federal Court Case No. **1:17-cv-00286**    State Court Case No. **NC-2016-0345**

| Record Information |
|---|

Confidential:    Yes ☐    No ☑    Description: _____

Sealed documents:    Yes ☐    No ☑    Description: _____

| Certification |
|---|

I, **Jane M. Anthony** _____, Clerk of the Rhode Island Superior Court for the County of **Newport** _____ do certify that the attached documents are all the documents included in the record in the above referenced case.

Date: Jun/13/2017

Clerk:
/s/ **Jane M. Anthony**

Prepared by:
/s/ **Patty DelBrocco**

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 1/18/2017 4:55:37 PM
Envelope: 898605
Reviewer: Patricia DelBrocco

# Exhibit 1

After Recording Return To:
Specialized Loan Servicing LLC
8742 Lucent Blvd, Ste 300, Highlands Ranch, CO 80129
Attn: Loan Resolution Department
Tax/Map/Parcel ID Number:
Intangible Tax: $0.00

_____[Space Above This Line For Recording Data] _____
Investor Loan Number: 164421907 Investor Number: 5033   Borrower: ANDREW E FORD

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):   ANDREW E FORD whose address is 77 WATSON AVE, JAMESTOWN, RI  02835
("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):  Specialized Loan Servicing LLC a    whose principal place of business and mailing address is 8742 Lucent Blvd. Ste 300, Highlands Ranch, CO 80129 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber See Original Instrument , of the Records of NEWPORT County, RHODE ISLAND and Note ("Note"): March 30, 2007

Loan Number: 1008265204

Property Address ("Property"): 77 WATSON AVE, JAMESTOWN, RI  02835

  See Legal description referenced in the original security instrument.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.       **My Representations.**   I certify, represent to Lender, covenant and agree:

   A.       I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

        B.       One of the borrowers signing this Agreement lives in the property as a principal residence, and the Property has not been condemned;

        C.       There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

        D.       I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

        E.       Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

        F.       If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

        G.       I have made or will make all payments required under a trial period plan.

2.       **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

        A.       If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

        B.       I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.       **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on November 1, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on December 1, 2015.

        A.       The new Maturity Date will be: July 1, 2047.

        B.       The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $376,959.06 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.    $109,820.09 of the New Principal Balance shall be deferred (the 'Deferred Principal Balance') and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $267,138.97. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 11/1/2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/1/2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 11/1/2015 | $808.96 | $410.06 May adjust periodically | $1,219.02 May adjust periodically | 12/1/2015 | 60 |
| 6 | 3.000% | 11/1/2020 | $939.83 | May adjust periodically | May adjust periodically | 12/1/2020 | 12 |
| 7-32 | 3.750% | 11/1/2021 | $1,042.51 | May adjust periodically | May adjust periodically | 12/1/2021 | 308 |

I will make these payments every month, in addition to 1 final Balloon Payment payable on July 1, 2047.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

The amount deferred through this modification agreement is $109,820.09 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

    (a) Unpaid Interest: $0.00
    (b) Corporate Advances: $0.00
    (c) Principal: $109,820.09

Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

    (a) Prior deferred interest:  $0.00

Page 3 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
· - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

Page 6 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157 3/09 (rev. 10/10) SigniaDocs, Inc. 2010

Page 33

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 1/18/2017 1:08:17 PM
Envelope: 898605
Reviewer: Patricia DelBrocco

Case 1:17-cv-00286-M-LDA   Document 3   Filed 06/13/17   Page 35 of 71 PageID #: 63

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS PLEASE CONTACT OUR LOAN RESOLUTION DEPARTMENT AT 1-800-306-6059.

Page 7 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

Page 34

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 1/18/2017 CV-00286-M-LDA   Document 3   Filed 06/13/17   Page 36 of 71 PageID #: 64
Envelope: 898605
Reviewer: Patricia DelBrocco

In Witness Whereof, the Lender and I have executed this Agreement.

Specialized Loan Servicing LLC
As Servicer

By: _____ (Seal)

Name: _____

Its: _____

Date: _____

_____ (Seal)   Date: 01/26/16

ANDREW E FORD

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____, Trustee if the _____ Trust instrument dated

_____, for the benefit of _____ (Borrower)

_____, Trustee if the _____ Trust instrument dated

_____, for the benefit of _____ (Borrower)

**STATE OF RHODE ISLAND**              **SUPERIOR COURT**
**NEWPORT, SC.**

_____

ANDREW E. FORD,          )

           )

       *Plaintiff*,      )     C.A. No. NC-2016-0345

           )

vs.                )     AMENDED COMPLAINT

           )

SPECIALIZED LOAN SERVICING, LLC,   )     JURY DEMAND

           )

       *Defendants*.    )

_____)

## INTRODUCTION

1.     This complaint arises from the intentional acts of Specialized Loan Servicing, LLC (SLS) whereby they breached a contract and their duty of good faith and fair dealing by refusing to honor a Permanent Modification Contract agreed to by Plaintiff and the Defendant.

2.     The Plaintiff prays that this Honorable Court find that the Defendant breached the Permanent Modification contract as noted herein as well as their duty of good faith and fair dealing owed to the Plaintiff. Plaintiff further seeks declaratory judgement that any foreclosure or mortgagee's foreclosure sale is the direct and proximate result of Defendant's breach and is void. Moreover, the Plaintiff prays this Honorable Court enjoin the Defendant from taking further foreclosure action eviction action and/or transferring right title and interest in the subject matter property to any third party purchaser at mortgagee's foreclosure sale.

## JURISDICTION AND VENUE

3.     Venue is proper in this Court in that a substantial part of the events or omissions giving rise to this claim have occurred, and the real property that is the subject of the action is situated within the State of Rhode Island.

1

17-CV-00286-M-LDA   Document 3   Filed 06/13/17   Page 38 of 71 PageID #: 66

## PARTIES

4.      Plaintiff, Andrew E. Ford, resides at and claims to be the owner of real property located

77 Watson Avenue, Jamestown, RI 02835, which is the subject property referenced herein.

5.      Defendant, Specialized Loan Servicing, LLC (SLS) is a mortgage servicer and upon good

information    and    belief    is    located    at    8742    Lucent    Blvd,    Suite    300

Highlands Ranch, CO  80129.

## FACTS

6.      Plaintiff, Andrew E. Ford, resides at and claims to be the owner of real property located

77 Watson Avenue, Jamestown, RI 02835 (Subject Property), as evidenced by deed recorded in

the Jamestown Clerk's Office, Land Evidence Records in Book 347 at Page 15 on February 3,

2000.

7.      Subsequently, Plaintiff executed a mortgage and note as evidenced by a mortgage which

was recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 618 at Page 17

on March 30, 2007. (The Ford Mortgage). The servicing of the Ford Mortgage was ultimately

transferred to SLS.

8.      Plaintiff submitted a request for mortgage assistance to SLS in an effort to modify his

mortgage.

9.      Plaintiff was offered a Trial Period Plan (TPP) by SLS wherein he was to make three

monthly mortgage payments pursuant to the TPP and upon successful completion of the TPP

SLS would permanently modify The Ford Mortgage. Plaintiff made all three payments pursuant

to the TPP, on time and as agreed and continued making those payments for an extended period

after the first three payments.

2

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 1/18/2017 4:39:37 PM
Envelope: 898605
Reviewer: Patricia DelBrocco

Case 1:17-cv-00286-M-LDA   Document 3   Filed 06/13/17   Page 39 of 71 PageID #: 67

10.     On or about November 2015, SLS offered Plaintiff a Permanent Modification Contract. Plaintiff accepted said offer and executed and returned the Permanent Modification Contract to SLS on January 26, 2016. (See: Exhibit 1).

11.     Plaintiff made payments pursuant to the Permanent Modification Contract on time and as agreed through May 2016 when SLS breached the modification contract, refused to accept further payment and proceeded to initiate foreclosure proceedings.

12.     On or about July 15, 2016, SLS, through their attorney Harmon Law, P.C. caused to be sent to Plaintiff a Notice of Mortgagee' Foreclosure Sale, stating a sale date of September 7, 2016.

13.     On or about July 18, 2016, Plaintiff sent to Harmon Law, P.C. a letter disputing the validity of the debt.

14.     On August 22, 2016 SLS, through the attorney Harmon Law, P.C., responded claiming the debt was valid and that foreclosure would move forward. Said letter did not state that Plaintiff and SLS had entered into a Permanent Modification Contract.

15.     On September 7, 2016, SLS purportedly foreclosed the Ford Mortgage and sold the subject property at mortgagee's foreclosure sale.

## COUNT I
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

16.     The Plaintiff hereby reincorporates paragraphs 1 – 15 as if they were fully articulated herein.

17.     Defendant SLS has breached the Permanent Modification Contract entered into by Plaintiff and SLS by refusing to honor said contract and the terms and agreed to amounts due pursuant to same.

3

18.     Defendant SLS breached their duty of good faith and fair dealing by failing to cure those breaches of said contract, and instead foreclosed the subject mortgage.

19.     Plaintiff is being irreparably harmed by the actions of the Defendant.

20.     Plaintiff has no other remedy at law but to seek the relief requested herein.

21.     The Equities of the matter favor the Plaintiff.

22.     Public Policy matters favor the Plaintiff.

**WHEREFORE**, Plaintiff prays for the following relief:

a.  Determine that Defendant SLS has breached the Permanent Modification Contract entered into between Plaintiff and SLS;

b.  Determine that the Defendant SLS has breached their duty of good faith and fair dealing they owed to the Plaintiff;

c.  Determine that any mortgagee's foreclosure sale conducted by the Defendant is the direct and proximate result of Defendant's breach and is void and without force and effect;

d.  Enjoin the Defendant from transferring any right, title, and interest in the subject property to any bidder at mortgagee's foreclosure sale and or void any such transfer already made;

e.  Grant a permanent or final injunction enjoining the Defendant, their agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiff, including, but not limited to, a stay of foreclosure and or eviction;

f.  Award the Plaintiff compensatory damages against the Defendant for their wrongful slander of title and abuse of process in a sum to be determined by a trier of fact;

g.  Award legal fees and costs;

4

1:17-CV-00286-M-LDA    Document 3    Filed 06/13/17    Page 41 of 71 PageID #: 69

   h. Award punitive damages;

   i. Award such other relief as this Court deems just and proper.

**COUNT II**
**BREACH OF DUTY OF GOOD FAITH AND REASONABLE DILIGENCE**

23. Plaintiff repeats and incorporates paragraphs 1 - 22 above as if fully articulated herein.

24. As the entity responsible for servicing Plaintiff's mortgage loan, SLS, owed the Plaintiff a duty of good faith and fair dealing.

25. By breaching the terms of the Permanent Modification Contract agreed to by Plaintiff and SLS, the Defendants, SLS, violated this duty.

26. By refusing to honor the Permanent Modification Contract proceeding with a non-judicial foreclosure, Defendant violated this duty.

27. The Plaintiff was damaged by these breaches of duty including without limitation, loss of equity, lost opportunities to work-out his mortgage delinquency, and by imposition of inappropriate foreclosure fees and costs on his account.

28. Plaintiff suffered severe and extreme emotional and mental distress as the direct result of the Defendant's actions.

29. The Plaintiff is entitled to a declaratory judgment determining that the attempted and/or completed foreclosure and mortgagee's foreclosure sale of the subject property is void.

30. The Plaintiff is entitled to an injunction preventing the transfer of the right, title, and interest in the subject property.

31. The Plaintiff is entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

32. Plaintiff is entitled to a Court Order requiring that Defendant SLS take all necessary steps to restore legal title to the subject property as if no foreclosure sale had ever occurred.  In

5

addition, Plaintiff is entitled to be returned to his status and circumstances prior to the wrongful

foreclosure sale.

**COUNT III**
**BREACH OF CONTRACT AND BREACH OF COVENANT**
**OF GOOD FAITH AND FAIR DEALING**
**FOR VIOLATIONS OF LAW ARISING FROM THE PERMANENT MODIFICATION**

**CONTRACT**

33.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

34.     As described above, the Permanent Modification Contract sent by SLS to the Plaintiff

constitutes a valid offer.

35.     By executing the Permanent Modification Contract and returning it to SLS Plaintiff

accepted SLS's offer.

36.     Alternatively, Plaintiff's return of the Permanent Modification Contract constitutes an

offer.  Acceptance of that offer occurred when SLS accepted Plaintiff's payments made pursuant

to the Permanent Modification Contract.

37.     The Permanent Modification Contract was supported by consideration.  Plaintiff's

payments to SLS consideration.

38.     Plaintiff and SLS thereby formed a valid contract.

39.     To the extent that the contract was subject to a condition subsequent by providing SLS an

opportunity to review the documentation submitted by Plaintiff when he returned the signed

Permanent Modification Contract, to determine its sufficiency, this condition was waived by SLS

in that it failed to timely raise it and/or it is estopped to assert it as a defense to Plaintiff's claims.

40.     By refusing to honor the terms of the Permanent Modification Contract, Defendant

breached the contract.

41.     Plaintiff remains ready, willing and able to perform under the contract.

6

42.     Plaintiff has suffered harm and is threatened with additional harm from Defendant's breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

43.     The Defendant is obligated by contract and common law to act in good faith and to deal fairly with the Plaintiff so as to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.  *See e.g*., *Ide Farm & Stable, Inc. v. Cardi,* 110 R.I. 735, 739 (1972).

44.     Upon good information and belief SLS routinely and regularly acts in bad faith and breaches this duty for its own economic benefit, preventing contractual objectives from being achieved, by:

a.  Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff;

b.  Failing to properly train and supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel, and personnel implementing its modification programs;

c.   Making inaccurate calculations and determinations of Plaintiff's Permanent Modification Contract terms;

d.  Encouraging and/or allowing its employees and agents to make inaccurate and fraudulent misrepresentations regarding the terms and amounts due with regards to Permanent Modification Contracts;

e.  Failing to follow through on written and implied promises;

f.  Failing to follow through on contractual obligations; and

7

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 1/18/2017 4:09:57 PM
Envelope: 898605
Reviewer: Patricia DelBrocco

Case 1:17-cv-00286-M-LDA   Document 3   Filed 06/13/17   Page 44 of 71 PageID #: 72

g. Failing to give correct or otherwise resolve Plaintiff's complaint's regarding the Permanent Modification Contract.

45. As a result of these failures to act in good faith and the absence of fair dealing, the Defendants' caused Plaintiff harm, as alleged above. The Defendants' bad faith was thus to Plaintiff's detriment.

### COUNT IV
### PROMISSORY ESTOPPEL, IN THE ALTERNATIVE

46. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

47. SLS, by way of its Permanent Modification Contract, made representations to Plaintiff that if he returned the said Contract executed, and made his payments, the terms of the Contract would be adhered to.

48. The Permanent Modification Contract was intended to induce Plaintiff to rely on it and make monthly payments.

49. Plaintiff did indeed rely on SLS's representation, by submitting payments as agreed.

50. Given the language in the Permanent Modification Contract, Plaintiff's reliance was reasonable.

51. Plaintiff's reliance was to his detriment. Plaintiff's detrimental reliance is measured by the difference between his current circumstances and the terms of the modification that he was entitled to – a difference that includes the wrongful loss of a property interest. Such detriment includes longer loan payoff times, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest. Further, Plaintiff has lost the opportunity to fund other strategies to deal with their default and to avoid foreclosure.

8

## COUNT V

## VIOLATION OF R.I GEN. LAWS § 6-13 - CONSUMER PROTECTION AND UNFAIR AND DECEPTIVE ACTS AND PRACTICES LAWS

52.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

53.     SLS's conduct as set forth herein constitutes trade - the offering, advertising and sale of goods and services.

54.     SLS's conduct as set forth herein occurred in the course of trade or commerce.

55.     SLSs conduct as set forth herein affects the public interest and is part of a generalized course of conduct affecting numerous consumers, including Plaintiff.

56.     Plaintiff is a consumer.

57.     Plaintiff sought to obtain SLS's goods and services primarily for personal, family or household use.

58.     SLS made false, deceptive and misleading representations and omissions about material aspects of the goods and services described herein.

59.     SLS made these representations and omissions knowingly and willfully and with the intent that Plaintiff would rely on them and would enter into contract or obligations as a result.

60.     SLS's conduct was likely to induce reliance and to create confusion and misunderstanding.

61.     Plaintiffs' did rely on SLS's representations and omissions.

62.     SLS's conduct as set forth herein is deceptive, unfair and unconscionable, in violation of R.I. Gen. Laws § 6-13.1-2.

63.     SLS's conduct as set forth herein is not required, permitted or authorized by any state or federal law.

9

64.     SLS's conduct as set forth herein violates established public policy, and the harms caused to Plaintiff as a consumer greatly outweighs any benefits associated with that conduct.

65.     As a result of SLS's conduct, Plaintiff suffered ascertainable damages and ascertainable losses including:

> a.     wrongful foreclosure;
>
> b.     otherwise avoidable potential loss of home to foreclosure;
>
> c.     increased fees and other costs to avoid or attempt to avoid foreclosure;
>
> d.     loss of savings in fruitless attempts to secure loan modification;
>
> e.     loss of opportunities to pursue other refinancing or loss mitigation strategies;
>
> f.     significant stress and emotional distress;
>
> g.     accrued interest and increased principal balances; and
>
> h.     less favorable potential modification terms.

66.     Plaintiffs' are entitled to actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT VI
## QUIETING TITLE

67.     The Plaintiff hereby restates and reincorporates paragraphs 1 – 66 as if they were fully articulated herein.

68.     The real estate as issue is located at 77 Watson Lane, Jamestown, RI 02835.

69.     SLS claims to have an interest in the property pursuant to a void foreclosure and mortgagee's foreclosure sale.  The address of SLS is set forth hereinabove.

10

70.     Defendant, SLS, and Plaintiff, both make claim to the interest in the aforesaid subject property.

71.     Plaintiff claims title to the property pursuant to a Deed recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 347 at Page 15 on February 3, 2000, granting the Property to Plaintiff.

72.     Defendant SLS claims an interest adverse to Plaintiff, by way of a void Foreclosure Deed recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 880 at Page 152 on November 10, 2016.

**WHEREFORE**, Plaintiff prays for the following relief:

a.  That judgment enters for him on this complaint regarding title to and ownership of the subject property that is subject of this claim;

b.  That the Court find as a matter of law that the owner of this property is Andrew E. Ford

c.  That this Court enters an order quieting title to this property by entering an order that the fee related thereto belongs to Andrew E. Ford;

d.  That the Court or other trier of fact award Plaintiff costs, including reasonable attorney's fees, and damages it deems appropriate.

Dated: January 10, 2017

Respectfully Submitted, Plaintiff,
by his Attorney,


/s/ Nicholas S. Gelfuso
Nicholas S. Gelfuso, Esq. (7913)
48 Power Road
Pawtucket, RI 02860
401-273-8200 Phone
401-859-2333 Fax
gelfusolawoffice@gmail.com

11

STATE OF RHODE ISLAND AND ![seal] PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>NC-2016-0345 |
| **Plaintiff**<br>Andrew E. Ford<br>v.<br>**Defendant**<br>Specialized Loan Servicing, LLC | **Attorney for the Plaintiff or the Plaintiff**<br>Nicholas Gelfuso |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>131 CLAY ST<br>CENTRAL FALLS RI  02863 |
| Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport RI  02840<br>(401) 841-8330 | **Address of the Defendant**<br>8742 Lucent Blvd<br>Suite 300<br>Highlands Ranch CO  80129 |

**TO THE DEFENDANT, Specialized Loan Servicing, LLC:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 9/9/2016. | /s/ Jane Anthony<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2014)



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>Andrew E. Ford<br>    v.<br>**Defendant**<br>Specialized Loan Servicing, LLC | **Civil Action File Number**<br>NC-2016-0345 |

### PROOF OF SERVICE

    I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Specialized Loan Servicing, LLC, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
    Name of person of suitable age and discretion _____
    Address of dwelling house or usual place of abode _____
    _____
    Age _____
    Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
    Name of authorized agent _____
    If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
    _____

☐ With a guardian or conservator of the Defendant.
    Name  of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
    Name  of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)

 

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:
☐ By delivering said papers to an officer or a managing or general agent.
　Name of person and designation _____
☐ By leaving said papers at the office of the corporation with a person employed therein.
　Name of person and designation _____
☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ I was unable to make service after the following reasonable attempts: _____
_____

SERVICE DATE: _____/_____/_____　　SERVICE FEE $ _____
　　　　　　　Month　Day　Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
 Signature

State of _____
County of _____

　On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2014)



SC-CMS-1 (revised July 2014)

# Exhibit 1

After Recording Return To:
Specialized Loan Servicing LLC
8742 Lucent Blvd, Ste 300, Highlands Ranch, CO 80129
Attn:  Loan Resolution Department
Tax/Map/Parcel ID Number:
Intangible Tax:  $0.00

_____[Space Above This Line For Recording Data] _____
Investor Loan Number: 164421907 Investor Number: 5033   Borrower:  ANDREW E FORD

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):   ANDREW E FORD whose address is 77 WATSON AVE, JAMESTOWN, RI  02835
("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):  Specialized Loan Servicing LLC a    whose principal place of business and
mailing address is 8742 Lucent Blvd, Ste 300, Highlands Ranch, CO 80129 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber
See Original Instrument , of the Records of NEWPORT County, RHODE ISLAND and Note
("Note"):  March 30, 2007

Loan Number:  1008265204

Property Address ("Property"):  77 WATSON AVE, JAMESTOWN, RI  02835

See Legal description referenced in the original security instrument.

If my representations in Section 1 continue to be true in all material respects, then this Home
Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.
The Mortgage and Note together, as they may previously have been amended, are referred to as the
"Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given
to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.         **My Representations.**   I certify, represent to Lender, covenant and agree:

    A.         I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
               Documents or my default is imminent, and (ii) I do not have sufficient income or access
               to sufficient liquid assets to make the monthly mortgage payments now or in the near
               future;

B.     One of the borrowers signing this Agreement lives in the property as a principal residence, and the Property has not been condemned;

C.     There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

D.     I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E.     Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.     If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.     I have made or will make all payments required under a trial period plan.

2.     **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.     If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.     I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.     **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on November 1, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on December 1, 2015.

A.     The new Maturity Date will be: July 1, 2047.

B.     The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $376,959.06 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

Page 2 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157 3/09 (rev. 10/10) SigniaDocs, Inc. 2010

Page 53

C.    $109,820.09 of the New Principal Balance shall be deferred (the 'Deferred Principal Balance') and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $267,138.97. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 11/1/2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/1/2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 11/1/2015 | $808.96 | $410.06 May adjust periodically | $1,219.02 May adjust periodically | 12/1/2015 | 60 |
| 6 | 3.000% | 11/1/2020 | $939.83 | May adjust periodically | May adjust periodically | 12/1/2020 | 12 |
| 7-32 | 3.750% | 11/1/2021 | $1,042.51 | May adjust periodically | May adjust periodically | 12/1/2021 | 308 |

I will make these payments every month, in addition to 1 final Balloon Payment payable on July 1, 2047.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

The amount deferred through this modification agreement is $109,820.09 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

    (a) Unpaid Interest: $0.00
    (b) Corporate Advances: $0.00
    (c) Principal: $109,820.09

Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

    (a) Prior deferred interest:  $0.00

Page 3 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157 3/09 (rev. 10/10) SigniaDocs, Inc. 2010

        provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.    That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.    That I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.    Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS PLEASE CONTACT OUR LOAN RESOLUTION DEPARTMENT AT 1-800-306-6059.

In Witness Whereof, the Lender and I have executed this Agreement.

Specialized Loan Servicing LLC
As Servicer

By: _____ (Seal)
Name: _____
Its: _____
Date: _____


_____ (Seal)  Date: 01/26/16
ANDREW E FORD


If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____, *Trustee if the* _____ *Trust instrument dated*

_____, *for the benefit of* _____ *(Borrower)*

_____, *Trustee if the* _____ *Trust instrument dated*

_____, *for the benefit of* _____ *(Borrower)*


Page 8 of 8 Pages
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -Single Family 00MU
- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) SigniaDocs, Inc. 2010

Page 57

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 9/9/2016 11:13 AM
Envelope: 749416
Reviewer: Patricia DelBrocco

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## CIVIL CASE COVER SHEET – ELECTRONIC FILING

    Pursuant to provisional Article X, Rule 1(f) of the Rhode Island Supreme Court Rules Governing Electronic Filing, a civil case cover sheet shall be filed with any case initiating document(s). The Plaintiff/Petitioner shall file a civil case cover sheet for each named party. The information is being requested for the purpose of ensuring accurate internal record keeping by the Rhode Island Judiciary. Once the information is entered into the case management system by the court, the document shall be sealed by the court and it shall not be available to the parties or the public due to the personal identifying information contained therein.

| COURT | County |
|---|---|
| ☑ Superior Court | ☐ Providence/Bristol County or Sixth Division |
| ☐ Family Court | ☐ Washington County or Fourth Division |
| ☐ District Court | ☐ Kent County or Third Division |
| ☐ Workers' Compensation Court | ☑ Newport County or Second Division |
| ☐ Rhode Island Traffic Tribunal | |

    The Plaintiff/Petitioner shall fill in the Plaintiff/Petitioner party information, party information for the Defendant/Respondent to the best of the Plaintiff/Petitioner's knowledge, and the attorney information, if applicable, with the case initiating document(s) for each named party.

### PARTY INFORMATION FOR THE PLAINTIFF/PETITIONER

| NAME | Andrew E. Ford | |
|---|---|---|
| ADDRESS | 77 Watson Avenue, Jamestown, RI 02835 | |
| SOCIAL SECURITY NUMBER* | TAXPAYER IDENTIFICATION NUMBER (TIN) OR EMPLOYER IDENTIFICATION NUMBER (EIN) | DATE OF BIRTH |
| TELEPHONE: | EMAIL ADDRESS: | |
| DRIVER'S LICENSE NUMBER AND STATE | ☑ Plaintiff/Petitioner is represented by counsel<br>☐ Plaintiff/Petitioner is self-represented | |
| COUNSEL FOR THE PLAINTIFF/PETITIONER<br>Nicholas S. Gelfuso | | |
| BAR NUMBER: 7913 | OFFICE TELEPHONE: 401-273-8200 | |

* Optional

## CONFIDENTIAL

CC-10 (revised October 2014)                                   Page 1 of 2

Case Number: NC-2016-0345
Filed in Newport County Superior Court
Submitted: 9/9/2016 8:4~
Envelope: 749416
Reviewer: Patricia DelBrocco

## PARTY INFORMATION FOR THE DEFENDANT/RESPONDENT

| NAME | Specialized Loan Servicing, LLC | |
|---|---|---|
| ADDRESS | 8742 Lucent Blvd. Suite 300, Highlands Ranch, CO 80129 | |
| SOCIAL SECURITY NUMBER* | TAXPAYER IDENTIFICATION NUMBER (TIN) OR EMPLOYER IDENTIFICATION NUMBER (EIN) | DATE OF BIRTH |
| TELEPHONE: | EMAIL ADDRESS: | |
| DRIVER'S LICENSE NUMBER AND STATE | ☐ Defendant/Respondent is represented by counsel ☐ Defendant/Respondent is self-represented | |
| COUNSEL FOR THE DEFENDANT/RESPONDENT | | |
| BAR NUMBER: | OFFICE TELEPHONE: | |

* Optional

| LANGUAGE INTERPRETER REQUEST | AMERICANS WITH DISABILITIES ACT (ADA) REQUEST | | | |
|---|---|---|---|---|
| ☐ Plaintiff/Petitioner  Language: | ☐ American Sign Language (ASL) Interpreter | ☐ Signed English | ☐ Oral | ☐ Certified Deaf Interpreter (CDI) |
| ☐ Defendant/Respondent  Language: | ☐ Assistive Listening Equipment: | | | |
| ☐ Witness/Victim/Parent  Language: | ☐ Visual Equipment or Accommodation: | | | |
| ☐ Other  Language: | ☐ Other Equipment or Services: | | | |

*This Civil Case Cover Sheet – Electronic Filing contains information to the best of my knowledge and was completed by:*

| Name: /s/ Nicholas S. Gelfuso | Date:  09/09/2016 |
|---|---|

**CONFIDENTIAL**

CC-10 (revised October 2014)                                        Page 2 of 2

**STATE OF RHODE ISLAND**                          **SUPERIOR COURT**
**NEWPORT, SC.**

_____

ANDREW E. FORD,                          )
                                         )
          *Plaintiff*,                   )          C.A. No.
                                         )
vs.                                      )          CIVIL COMPLAINT
                                         )
SPECIALIZED LOAN SERVICING, LLC,         )
                                         )          JURY DEMAND
          *Defendants*.                  )
_____ )


## INTRODUCTION

1.       This complaint arises from the intentional acts of Specialized Loan Servicing, LLC (SLS) whereby they breached a contract and their duty of good faith and fair dealing by refusing to honor a Permanent Modification Contract agreed to by Plaintiff and the Defendant.

2.       The Plaintiff prays that this Honorable Court find that the Defendant breached the Permanent Modification contract as noted herein as well as their duty of good faith and fair dealing owed to the Plaintiff. Plaintiff further seeks declaratory judgement that any foreclosure or mortgagee's foreclosure sale is the direct and proximate result of Defendant's breach and is void. Moreover, the Plaintiff prays this Honorable Court enjoin the Defendant from taking further foreclosure action eviction action and/or transferring right title and interest in the subject matter property to any third party purchaser at mortgagee's foreclosure sale.

## JURISDICTION AND VENUE

3.       Venue is proper in this Court in that a substantial part of the events or omissions giving rise to this claim have occurred, and the real property that is the subject of the action is situated within the State of Rhode Island.

1

## PARTIES

4.      Plaintiff, Andrew E. Ford, resides at and claims to be the owner of real property located

77 Watson Avenue, Jamestown, RI 02835, which is the subject property referenced herein.

5.      Defendant, Specialized Loan Servicing, LLC (SLS) is a mortgage servicer and upon good

information    and    belief    is    located    at    8742    Lucent    Blvd,    Suite    300

Highlands Ranch, CO  80129.

## FACTS

6.      Plaintiff, Andrew E. Ford, resides at and claims to be the owner of real property located

77 Watson Avenue, Jamestown, RI 02835 (Subject Property), as evidenced by deed recorded in

the Jamestown Clerk's Office, Land Evidence Records in Book 347 at Page 15 on February 3,

2000.

7.      Subsequently, Plaintiff executed a mortgage and note as evidenced by a mortgage which

was recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 618 at Page 17

on March 30, 2007. (The Ford Mortgage). The servicing of the Ford Mortgage was ultimately

transferred to SLS.

8.      Plaintiff submitted a request for mortgage assistance to SLS in an effort to modify his

mortgage.

9.      Plaintiff was offered a Trial Period Plan (TPP) by SLS wherein he was to make three

monthly mortgage payments pursuant to the TPP and upon successful completion of the TPP

SLS would permanently modify The Ford Mortgage. Plaintiff made all three payments pursuant

to the TPP, on time and as agreed and continued making those payments for an extended period

after the first three payments.

10.     On or about November 2015, SLS offered Plaintiff a Permanent Modification Contract. Plaintiff accepted said offer and executed and returned the Permanent Modification Contract to SLS on January 26, 2016. (See: Exhibit 1).

11.     Plaintiff made payments pursuant to the Permanent Modification Contract on time and as agreed through March 2016 when SLS breached the modification contract, refused to accept further payment and proceeded to initiate foreclosure proceedings.

12.     On or about July 15, 2016, SLS, through their attorney Harmon Law, P.C. caused to be sent to Plaintiff a Notice of Mortgagee' Foreclosure Sale, stating a sale date of September 7, 2016.

13.     On or about July 18, 2016, Plaintiff sent to Harmon Law, P.C. a letter disputing the validity of the debt.

14.     On August 22, 2016 SLS, through the attorney Harmon Law, P.C., responded claiming the debt was valid and that foreclosure would move forward. Said letter did not state that Plaintiff and SLS had entered into a Permanent Modification Contract.

15.     On September 7, 2016, SLS purportedly foreclosed the Ford Mortgage and sold the subject property at mortgagee's foreclosure sale.

## COUNT I
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

16.     The Plaintiff hereby reincorporates paragraphs 1 – 15 as if they were fully articulated herein.

17.     Defendant SLS has breached the Permanent Modification Contract entered into by Plaintiff and SLS by refusing to honor said contract and the terms and agreed to amounts due pursuant to same.

3

18.     Defendant SLS breached their duty of good faith and fair dealing by failing to cure those breaches of said contract, and instead foreclosed the subject mortgage.

19.     Plaintiff is being irreparably harmed by the actions of the Defendant.

20.     Plaintiff has no other remedy at law but to seek the relief requested herein.

21.     The Equities of the matter favor the Plaintiff.

22.     Public Policy matters favor the Plaintiff.

**WHEREFORE**, Plaintiff prays for the following relief:

a.   Determine that Defendant SLS has breached the Permanent Modification Contract entered into between Plaintiff and SLS;

b.   Determine that the Defendant SLS has breached their duty of good faith and fair dealing they owed to the Plaintiff;

c.   Determine that any mortgagee's foreclosure sale conducted by the Defendant is the direct and proximate result of Defendant's breach and is void and without force and effect;

d.   Enjoin the Defendant from transferring any right, title, and interest in the subject property to any bidder at mortgagee's foreclosure sale and or void any such transfer already made;

e.   Grant a permanent or final injunction enjoining the Defendant, their agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiff, including, but not limited to, a stay of foreclosure and or eviction;

f.   Award the Plaintiff compensatory damages against the Defendant for their wrongful slander of title and abuse of process in a sum to be determined by a trier of fact;

g.   Award legal fees and costs;

4

    h.   Award punitive damages;

    i.   Award such other relief as this Court deems just and proper.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND REASONABLE DILIGENCE

23.    Plaintiff repeats and incorporates paragraphs 1 - 22 above as if fully articulated herein.

24.    As the entity responsible for servicing Plaintiff's mortgage loan, SLS, owed the Plaintiff a duty of good faith and fair dealing.

25.    By breaching the terms of the Permanent Modification Contract agreed to by Plaintiff and SLS, the Defendants, SLS, violated this duty.

26.    By refusing to honor the Permanent Modification Contract proceeding with a non-judicial foreclosure, Defendant violated this duty.

27.    The Plaintiff was damaged by these breaches of duty including without limitation, loss of equity, lost opportunities to work-out his mortgage delinquency, and by imposition of inappropriate foreclosure fees and costs on his account.

28.    Plaintiff suffered severe and extreme emotional and mental distress as the direct result of the Defendant's actions.

29.    The Plaintiff is entitled to a declaratory judgment determining that the attempted and/or completed foreclosure and mortgagee's foreclosure sale of the subject property is void.

30.    The Plaintiff is entitled to an injunction preventing the transfer of the right, title, and interest in the subject property.

31.    The Plaintiff is entitled to cancellation costs and fees assessed to her for wrongful foreclosure, together with additional damages.

32.    Plaintiff is entitled to a Court Order requiring that Defendant SLS take all necessary steps to restore legal title to the subject property as if no foreclosure sale had ever occurred.    In

5

addition, Plaintiff is entitled to be returned to his status and circumstances prior to the wrongful foreclosure sale.

## COUNT III
## BREACH OF CONTRACT AND BREACH OF COVENANT
## OF GOOD FAITH AND FAIR DEALING
## FOR VIOLATIONS OF LAW ARISING FROM THE PERMANENT MODIFICATION
## CONTRACT

33.      Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

34.      As described above, the Permanent Modification Contract sent by SLS to the Plaintiff constitutes a valid offer.

35.      By executing the Permanent Modification Contract and returning it to SLS Plaintiff accepted SLS's offer.

36.      Alternatively, Plaintiff's return of the Permanent Modification Contract constitutes an offer.  Acceptance of that offer occurred when SLS accepted Plaintiff's payments made pursuant to the Permanent Modification Contract.

37.      The Permanent Modification Contract was supported by consideration.  Plaintiff's payments to SLS consideration.

38.      Plaintiff and SLS thereby formed a valid contract.

39.      To the extent that the contract was subject to a condition subsequent by providing SLS an opportunity to review the documentation submitted by Plaintiff when he returned the signed Permanent Modification Contract, to determine its sufficiency, this condition was waived by SLS in that it failed to timely raise it and/or it is estopped to assert it as a defense to Plaintiff's claims.

40.      By refusing to honor the terms of the Permanent Modification Contract, Defendant breached the contract.

41.      Plaintiff remains ready, willing and able to perform under the contract.

6

42.     Plaintiff has suffered harm and is threatened with additional harm from Defendant's breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

43.     The Defendant is obligated by contract and common law to act in good faith and to deal fairly with the Plaintiff so as to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.   *See e.g.*, *Ide Farm & Stable, Inc. v. Cardi,* 110 R.I. 735, 739 (1972).

44.     Upon good information and belief SLS routinely and regularly acts in bad faith and breaches this duty for its own economic benefit, preventing contractual objectives from being achieved, by:

a.  Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff;

b.  Failing to properly train and supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel, and personnel implementing its modification programs;

c.   Making inaccurate calculations and determinations of Plaintiff's Permanent Modification Contract terms;

d.  Encouraging and/or allowing its employees and agents to make inaccurate and fraudulent misrepresentations regarding the terms and amounts due with regards to Permanent Modification Contracts;

e.  Failing to follow through on written and implied promises;

f.  Failing to follow through on contractual obligations; and

7

g.  Failing to give correct or otherwise resolve Plaintiff's complaint's regarding the

Permanent Modification Contract.

45.     As a result of these failures to act in good faith and the absence of fair dealing, the

Defendants' caused Plaintiff harm, as alleged above.  The Defendants' bad faith was thus to

Plaintiff's detriment.

**COUNT IV**
**PROMISSORY ESTOPPEL, IN THE ALTERNATIVE**

46.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

47.     SLS, by way of its Permanent Modification Contract, made representations to Plaintiff

that if he returned the said Contract executed, and made his payments, the terms of the Contract

would be adhered to.

48.     The Permanent Modification Contract was intended to induce Plaintiff to rely on it and

make monthly payments.

49.     Plaintiff did indeed rely on SLS's representation, by submitting payments as agreed.

50.     Given the language in the Permanent Modification Contract, Plaintiff's reliance was

reasonable.

51.     Plaintiff's reliance was to his detriment.  Plaintiff's detrimental reliance is measured by

the difference between his current circumstances and the terms of the modification that he was

entitled to – a difference that includes the wrongful loss of a property interest.  Such detriment

includes longer loan payoff times, higher principle balances, improper negative reporting to

credit bureaus; inappropriate fees and charges assessed, including broker price opinion fees,

inspection fees, attorney's fees, "process management" fees, late fees and other charges

associated with delinquency and default, and increased accrued interest.  Further, Plaintiff has

lost the opportunity to fund other strategies to deal with their default and to avoid foreclosure.

8

## COUNT V

## VIOLATION OF R.I GEN. LAWS § 6-13 - CONSUMER PROTECTION AND UNFAIR AND DECEPTIVE ACTS AND PRACTICES LAWS

52.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

53.     SLS's conduct as set forth herein constitutes trade - the offering, advertising and sale of goods and services.

54.     SLS's conduct as set forth herein occurred in the course of trade or commerce.

55.     SLSs conduct as set forth herein affects the public interest and is part of a generalized course of conduct affecting numerous consumers, including Plaintiff.

56.     Plaintiff is a consumer.

57.     Plaintiff sought to obtain SLS's goods and services primarily for personal, family or household use.

58.     SLS made false, deceptive and misleading representations and omissions about material aspects of the goods and services described herein.

59.     SLS made these representations and omissions knowingly and willfully and with the intent that Plaintiff would rely on them and would enter into contract or obligations as a result.

60.     SLS's conduct was likely to induce reliance and to create confusion and misunderstanding.

61.     Plaintiffs' did rely on SLS's representations and omissions.

62.     SLS's conduct as set forth herein is deceptive, unfair and unconscionable, in violation of R.I. Gen. Laws § 6-13.1-2.

63.     SLS's conduct as set forth herein is not required, permitted or authorized by any state or federal law.

9

64.     SLS's conduct as set forth herein violates established public policy, and the harms caused to Plaintiff as a consumer greatly outweighs any benefits associated with that conduct.

65.     As a result of SLS's conduct, Plaintiff suffered ascertainable damages and ascertainable losses including:

> a.     wrongful foreclosure;
>
> b.     otherwise avoidable potential loss of home to foreclosure;
>
> c.     increased fees and other costs to avoid or attempt to avoid foreclosure;
>
> d.     loss of savings in fruitless attempts to secure loan modification;
>
> e.     loss of opportunities to pursue other refinancing or loss mitigation strategies;
>
> f.     significant stress and emotional distress;
>
> g.     accrued interest and increased principal balances; and
>
> h.     less favorable potential modification terms.

66.     Plaintiffs' are entitled to actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT VI
## QUIETING TITLE

67.     The Plaintiff hereby restates and reincorporates paragraphs 1 – 66 as if they were fully articulated herein.

68.     The real estate as issue is located at 77 Watson Lane, Jamestown, RI 02835.

69.     SLS claims to have an interest in the property pursuant to a void foreclosure and mortgagee's foreclosure sale.  The address of SLS is set forth hereinabove.

10

70.     Defendant, SLS, and Plaintiff, both make claim to the interest in the aforesaid subject property.

71.     Plaintiff claims title to the property pursuant to a Deed recorded in the Jamestown Clerk's Office, Land Evidence Records in Book 347 at Page 15 on February 3, 2000, granting the Property to Plaintiff.

72.     Defendant SLS claims an interest adverse to Plaintiff, by way of a void foreclosure and mortgagee's foreclosure sale.

**WHEREFORE**, Plaintiff prays for the following relief:

   a.   That judgment enters for him on this complaint regarding title to and ownership of the subject property that is subject of this claim;

   b.   That the Court find as a matter of law that the owner of this property is Andrew E. Ford

   c.   That this Court enters an order quieting title to this property by entering an order that the fee related thereto belongs to Andrew E. Ford;

   d.   That the court or other trier of fact, order the Defendant to pay Plaintiff damages which it deems appropriate; and

   e.   That the Court or other trier of fact award Plaintiff costs, including reasonable attorney's fees.

Dated: September 9, 2016

                                        Respectfully Submitted, Plaintiff,
                                        by his Attorney,


                                        /s/ Nicholas S. Gelfuso
                                        Nicholas S. Gelfuso, Esq. (7913)
                                        23 Acorn Street
                                        Providence, RI 02903
                                        401-273-8200 Phone
                                        401-859-2333 Fax
                                        gelfusolawoffice@gmail.com

11